# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00384-CR

### Ex parte Celeste Marie Beard

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 390TH JUDICIAL DISTRICT
NO. 9020236, HONORABLE JULIE H. KOCUREK, JUDGE PRESIDING**

Celeste Marie Beard is confined while awaiting trial on an indictment accusing her of capital murder, murder, and injury to an elderly person. Following her arrest, the district court granted the State=s motion that no bail be set. Beard then petitioned for a writ of habeas corpus urging that she is entitled to reasonable bail and asking that bail be set at $50,000. The writ issued and, after a hearing, the court set bail at $8,000,000. Beard appeals, complaining that the amount of bail is constitutionally and statutorily excessive. We will order bail reduced to $500,000.

## Jurisdiction

As an initial matter, we reject the State=s contention that we are without jurisdiction for want of an appealable order. The State argues that Beard=s writ application sought only the setting of bail, which was done, and thus she was granted all the relief she sought. The State reasons that if Beard is unhappy with the amount of bail, she must file another habeas corpus application or otherwise move for a reduction

of bail. Contrary to the State=s argument, Beard=s writ application did not merely ask that bail be set. Instead, the motion asked that *reasonable* bail be set, specifically in the amount of $50,000. The district court did not set bail in the amount requested, and Beard contends that the bail set is not reasonable. Because the district court has heard and considered evidence regarding the proper amount of bail and rendered its decision on that issue, it would be redundant and a waste of judicial resources to require the court to hold a second hearing. The appeal is properly before us.

**Right to Bail**

The Texas Constitution guarantees that A[a]ll prisoners shall be bailable by sufficient sureties, unless for capital offenses, when the proof is evident.@ Tex. Const. art. I, ' 11; *see* Tex. Code Crim. Proc. Ann. art. 1.07 (West 1977). The State made no effort to demonstrate that the proof is evident in this cause. The constitution also permits the denial of bail in certain noncapital cases when the accused has a prior record. Tex. Const. art. I, ' 11a. Section 11a was not invoked in this cause. Thus, Beard is entitled to reasonable bail, that is, bail that is not excessive. *See* U.S. Const. amend. VIII (excessive bail shall not be required); Tex. Const. art. I, ' 13 (same); Tex. Code Crim. Proc. Ann. art. 1.09 (West 1977) (same).

Code of criminal procedure article 17.15 is a legislative effort to implement the constitutional right to bail. 41 George E. Dix & Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* ' 16.51 (2d ed. 2001) (footnote omitted) (hereafter ADix and Dawson@); Tex. Code Crim. Proc. Ann. art. 17.15 (West Supp. 2002). Article 17.15 commits the setting of bail to the discretion of the trial court or magistrate, but sets forth five rules that, together with the constitution, govern the exercise of that discretion. Tex. Code Crim. Proc. Ann. art. 17.15. Bail should be sufficiently high to give reasonable

2

assurance that the undertaking will be complied with, but not so high as to make it an instrument of oppression. *Id*. art. 17.15(1), (2); *see Ex parte Vasquez*, 558 S.W.2d 477, 479 (Tex. Crim. App. 1977) (primary purpose of pretrial bail is to secure presence of defendant). The nature of the offense and the circumstances under which it was committed are factors to be considered in setting bail, as is the future safety of the community and the victim of the alleged offense. Tex. Code Crim. Proc. Ann. art. 17.15(3), (5). The defendant=s ability to make bail also must be considered, but is not of itself controlling. *Id*. art. 17.15(4); *Ex parte Gentry*, 615 S.W.2d 228, 231 (Tex. Crim. App. 1981). In applying article 17.15, consideration may be given to such evidentiary matters as the defendant=s work record, ties to the community, previous criminal record, and record of appearances in the past. *See Ex parte Williams*, 619 S.W.2d 180, 183 (Tex. Crim. App. 1981); *Gentry*, 615 S.W.2d at 231; *Ex parte Parish*, 598 S.W.2d 872, 873 (Tex. Crim. App. 1980); *Ex parte Keller*, 595 S.W.2d 531, 533 (Tex. Crim. App. 1980).

The burden is on the accused to prove that bail is excessive. *Ex parte Rubac*, 611 S.W.2d 848, 849 (Tex. Crim. App. 1981). We review the trial court=s ruling for an abuse of discretion. *Id*. at 850.

**Evidence**

*Nature and circumstances of offense*

During the early morning hours of October 2, 1999, Steven Beard was shot in the bedroom of the home he shared with his wife Celeste Beard and her two daughters from a previous marriage, whom he had adopted.[1] The women were in a different wing of the house when the shooting took place. A 20-gauge shotgun shell was found on the floor of the bedroom. The wound to Steven Beard=s abdomen was not immediately fatal. He died almost four months later, on January 27, 2000, having spent most of that time in the hospital.

Beard told police she had no idea who might have shot her husband. Based on information received from her daughters= boyfriends, however, police attention immediately focused on Tracey Tarlton. The evidence shows that Tarlton and Beard met in a hospital where both were receiving psychiatric treatment, and that Tarlton had become obsessed with Beard. Tarlton gave the police a 20-gauge shotgun that was shown to have fired the shell found in Steven Beard=s bedroom. Tarlton was arrested for injury to an elderly person. She gave a statement denying any involvement in the shooting and which did not inculpate Beard in any way. The charge against Tarlton was changed to murder following Steven Beard=s death.

Officer Rick Wines testified that Beard initially refused permission for the police to search her house, but later changed her mind. Little of interest was found during the search. She was also reluctant to permit officers to question Steven Beard in the hospital=s intensive care unit on the day after the shooting.

---

[1] In this opinion, all references to ABeard@ are to Celeste Beard. We will refer to Steven Beard by his full name, and we will sometimes use Celeste Beard=s full name to avoid confusion.

Steven Beard, who was unable to speak due to tubes in his mouth and throat, became agitated when the officers mentioned Tarlton=s name. When the officers returned a second time to question him, they found that Celeste Beard had posted a notice that no one, including the police, was to be admitted into her husband=s room. Security guards advised the police that, on Beard=s instructions, they would not be allowed to speak to Steven Beard. He died without the police again questioning him.

In March 2002, pursuant to a plea agreement with the State, Tarlton gave a statement in which she admitted shooting Steven Beard. According to Tarlton=s new statement, Celeste Beard planned the murder, giving Tarlton detailed instructions as to the method of carrying it out. Tarlton=s agreement with the State calls for her to receive a twenty-year sentence for murder in exchange for her cooperation in Beard=s prosecution.

The indictment in this cause contains three counts accusing Beard of capital murder, murder, and injury to an elderly person. The record does not reflect whether the State intends to seek the death penalty in this cause. At the least, a conviction for capital murder carries a mandatory life sentence. Tex. Pen. Code Ann. ' 12.31(a) (West 1994). The other offenses are first-degree felonies punishable by terms of imprisonment of between five and ninety-nine years, or life, and a fine of up to $10,000. *Id*. ' 12.32. Because she has a previous felony conviction, Celeste Beard is not eligible for jury-recommended probation. Tex. Code Crim. Proc. Ann. art. 42.12, ' 4(e) (West Supp. 2002). The court could not grant probation following a conviction for capital murder or murder, or following a conviction for injury to an elderly person if a deadly weapon finding were made. *Id*. ' 3g(a)(1)(A), (B), (2) (West Supp. 2002).

*Ability to make bail*

5

Steven Beard=s will and an inventory of his estate were admitted in evidence. According to the inventory, the estate consisted of his undivided half interest in the Austin residence and a Burnet County lake house collectively valued at $1,085,000, and cash and personal property valued at approximately $426,000. Under the terms of the will, Celeste Beard received the personal property and real estate free of all outstanding debts. The will also made a $1,000,000 cash bequest to Beard, reduced by a $500,000 payment made to her during the marriage. Jeannette Hudnall, the bank officer who manages Steven Beard=s estate, testified that the cash bequest might also be reduced by the value of additional gifts received by Celeste Beard during the marriage. Hudnall also testified that Beard received monthly cash payments from the estate of between $7500 and $10,500 that ended upon her arrest in March 2002.

Beard met Cole Johnson in February 2000 and married him in July of that year. Beard and Johnson moved from Austin to Southlake, in Tarrant County, in March 2001. Beard sold the two Austin-area houses for a total of approximately $2,000,000, and she and Johnson then purchased a house in Southlake for $521,000. Following her arrest, they sold this house for $570,000. Johnson testified that they netted $370,000 from the sale after paying a $200,000 lien for improvements. According to Johnson, this sum Awent to the lawyers.@ At the time of the hearing below, a sale of the furnishings of the Southlake house was planned. Johnson said he hoped to receive $100,000 at this sale. There was testimony that a substantial portion of this property had been part of Steven Beard=s estate.

Johnson testified that Awe don=t have any assets left,@ and that he and Beard could afford only Aa reasonably small bail.@ The State vigorously disputes this, arguing that the record supports the conclusion that Beard has at least $3,300,000 at her disposal. The State arrives at this figure by adding the

$500,000 Beard received from her husband during their marriage, the additional $500,000 to which she became entitled upon his death, the $2,000,000 received upon the sale of the two houses, and the monthly payments received from the estate. It must be considered, however, that the $500,000 marital gift was received at least four years ago, that the inventory reflects that the estate does not have $500,000 in cash, and that Hudnall indicated during cross-examination that payment of the cash bequest awaited a full accounting by the estate. In this connection, Hudnall testified that certain claims against the estate filed by Beard had been determined to be excessive. Johnson testified that Beard has incurred substantial legal expenses in regard to both the estate and the criminal charges. There is also evidence that Beard was not employed, that Johnson has been unemployed since January 2001, and that the couple lived on Beard=s estate income. Beard and Johnson traveled extensively following their marriage, and there is testimony regarding Beard=s many gifts to members of Johnson=s family.

A friend of Beard testified that she would be willing to assist her in making bail. This friend, who estimated her net worth at $1,500,000, testified, AI would sign a bond. I would put up my net worth for her.@

*Community safety*

Medical records in evidence reflect that Beard has been diagnosed with depression, suicidal ideation, and post-traumatic stress disorder. She has been hospitalized for these conditions several times. Her last hospitalization ended in April 2000, and Johnson testified that she has Abehaved in a very normal way@ since then.

In July 2000, an agreed protective order was issued by a Travis County district court prohibiting Beard from touching, threatening, harassing, or otherwise communicating with her daughters. The order recites that Beard had committed acts intended to result in or threaten physical harm, bodily injury, or assault.

*Other evidence*

Beard grew up in California and has also lived in Arizona. It is unclear from the record when she came to Texas or how long she lived in Travis County before she married Steven Beard. The date of that marriage is not in the record. Steven Beard was her fourth husband. As previously noted, Beard and her fifth husband, Cole Johnson, moved to Tarrant County in 2001. The couple has since sold the Tarrant County house, and Johnson testified that he and Beard intend to live in Travis County pending trial of this cause. Beard surrendered her passport to the district court at the hearing.

Johnson has numerous relatives in the Fort Worth and Dallas area, several of whom testified to Beard=s good character. The record is silent with respect to Beard=s family except for her two daughters, from whom she is estranged.

Beard has a college degree in accounting, but has not worked at least since her marriage to Steven Beard. Johnson has worked as a carpenter and bartender, but was unemployed at the time of the hearing. His former employer in Austin testified that he is prepared to hire Johnson as a carpenter.

In 1992, Beard was convicted in Arizona for felony fraud and placed on four years= probation. She received an early discharge after successfully completing two years of probation, which

**8**

included the payment of full restitution. There is no evidence that Beard has ever failed to comply with the conditions of bond.

## Discussion

In *Ludwig v. State*, 812 S.W.2d 323, 324 (Tex. Crim. App. 1991) (plurality op.), the trial court set bail in a capital murder case at $2,000,000, the court of appeals ordered it reduced to $1,000,000, and the court of criminal appeals ordered it further reduced to $50,000. The opinion observed that Athis Court has yet to condone a bail amount even approaching seven figures, even in a capital case.@ *Id*. at 325. *Ludwig* has been cited by commentators as suggesting that Abail in amounts of $250,000 or higher reflect at least questionable exercises of the considerable discretion left to magistrates and trial judges in setting bail@ and that Aamounts in the area of $50,000 are generally appropriate for even extremely serious cases.@ 41 Dix and Dawson ' 16.51 (footnote omitted). The authors note, however, that appellate courts have upheld pretrial bail in much larger amounts, including a $3,000,000 bail set in a serious drug case. *Id*.; *see Ex parte Reyes*, 4 S.W.3d 353, 355 (Tex. App.CHouston [1st Dist.] 1999, no pet.) (possession of cocaine having street value exceeding $56,000,000 with intent to deliver; high bail justified because Athe large amount of cash required to effect such transactions usually suggests involvement of monied backers who may consider the costs of bail bonds merely a normal business expense@).

A[C]ase law is of relatively little value in addressing the ultimate question of the appropriate amount of bail in a particular case@ because appellate decisions on bail matters are often brief and avoid extended discussions, and because the Acases are so individualized that generalization from results reached

in others is difficult.@ 41 Dix and Dawson ' 16.51.  Nevertheless, a review of some recent capital murder

bail cases is instructive.

In *Ex parte Simpson*, 77 S.W.3d 894, 897 (Tex. App.CTyler 2002, no pet.), the

defendant was accused of a Abrutal, gang-related murder@ and had written letters from jail indicating that, Aif

released on bond, there was a likelihood of his returning to the activities of the gang or fleeing the jurisdiction

of the court.@ The court of appeals, which had previously determined that a $1,000,000 bail was excessive,

upheld the district court=s order resetting bail at $600,000.  *Id*. at 898.

The Amarillo Court of Appeals reduced pretrial bail in a case involving the alleged capital

murder of a child from $2,000,000 to $100,000.  *Ex parte Milburn*, 8 S.W.3d 422, 427 (Tex.

App.CAmarillo 1999, no pet.).  The court placed particular emphasis on the defendant=s extensive ties to

the local community.  *Id*.

In *Ex parte McDonald*, 852 S.W.2d 730, 734-35 (Tex. App.CSan Antonio 1993, no

pet.), the defendant was accused of kidnapping his former wife and then stabbing her to death.  The

defendant=s son testified that he had been attacked by his father and would feel threatened if he were

released on bond.  *Id*. at 735.  The court concluded that $1,000,000 bail was excessive and ordered it

reduced to $75,000.  *Id*. at 736.

In another San Antonio case, the defendant was accused of beating his nine-year-old son to

death, hiding his body, and then reporting him kidnapped.  *Eggleston v. State*, 917 S.W.2d 100, 101

(Tex. App.CSan Antonio 1996, no pet.).  The defendant had lived all over the world during a military

career, had contacts in a number of other states, and had lived in San Antonio for only one month.  *Id*.  The

court of appeals ordered bail reduced from $1,000,000 to $300,000.  *Id*. at 103.

In yet another capital murder case, the San Antonio court affirmed an order setting pretrial

bail at $750,000.  *Ex parte Chavfull*, 945 S.W.2d 183, 187 (Tex. App.CSan Antonio 1997, no pet.).

The court cited the violent nature of the crime, the absence of evidence regarding the defendant=s financial

resources, and the defendant=s violent history.  *Id*.  We are not aware of a reported Texas capital murder

case in which a higher pretrial bail was approved or set by an appellate court following an excessiveness

review pursuant to article 17.15.[2]

The district court cited five factors as influencing its decision to set bail at $8,000,000 in this

cause:

$	A[T]he court does have to consider what the grand jury requested in this case, and it is
	a bail to be set at $20 million.@

$	AThe court finds that this defendant has been in this state, living in this state, it looks
	like, for no more than 10 years,@ has no significant ties to Travis County, and has ties
	to the Dallas area only by marriage Aand they have only known the defendant for two
	years.@

$	AThe resources and assets that are available to this defendant, which she is readily
	liquidating since her arrest, are quite large and something that this court C that courts

---

[2] In *Ramos v. State*, No. 13-01-296-CR, 2002 Tex. App. LEXIS 6448 (Tex. App.CCorpus Christi Aug. 30, 2002, no pet. h.), the court of appeals affirmed a district court order setting bail in a capital murder case at $1,000,000.  The sole issue, however, was whether the defendant was entitled to release pursuant to article 17.151.  *Id.* at *11; *see* Tex. Code Crim. Proc. Ann. art. 17.151 (West Supp. 2002) (defendant must be released if State not ready for trial within specified time).  The court of appeals did not consider whether the amount of bail was excessive under article 17.15.

11

in Travis County don=t see that often that are available to individuals that are charged with offenses.@

$    The Arizona conviction.

$    A[T]he charge of capital murder, which is the most serious crime that can be charged in this court, and it carries with it an automatic life sentence.@

In its brief to this Court, the State urges that Beard is a wealthy, dangerous woman who is a substantial flight risk. The State argues, AThe truth of this matter is that [Beard] is in a unique position due to her wealth, and that fact, together with the other circumstances adduced at the hearing of this case, render her case unusual. There appear to be no truly comparable cases in the Texas appellate case literature.@

Capital murder is a serious crime, but unfortunately it is not an uncommon one in Texas. The murder of which Beard is accused was neither more violent in its commission nor more abhorrent in its alleged motive than other capital murders that come before the courts of this state. Although Beard is accused of planning the commission of a violent crime, there is no evidence that she has been a violent person in the past. She has a criminal record, but for a single nonviolent property crime committed ten years ago and for which she successfully completed probation. Although the agreed protective order is evidence of the hard feelings, and perhaps physical violence, that have characterized Beard=s recent relationship with her daughters, we find no evidence in this record that Beard is a serious threat to community safety.

The factor that makes this case unusual is Beard=s apparent wealth. Viewing the evidence in the light most favorable to the district court=s order, it is evident that Beard has access to financial resources exceeding those of most criminal defendants. From this, and from Beard=s lack of deep roots in Austin or Texas, the State argues that she would be likely to flee if bail were set at a lower amount. The evidence

12

shows, however, that Beard received and sold the real estate which was the bulk of Steven Beard=s estate soon after his death, and after her alleged accomplice in the murder had been arrested. Logic suggests that if she were inclined to flee, she would have done so then. Instead, she and her new husband bought a house near Fort Worth, surrounded by his extended family. We also note that appellant has surrendered her passport to the district court. We find no evidence in this record that Beard represents an unusual flight risk.

Just as a defendant=s inability to afford bail does not, in itself, demonstrate that bail is excessive, a defendant=s ability to afford bail in the amount set does not in itself justify bail in that amount.[3] In setting bail, a balance must be struck between the defendant=s presumption of innocence and the State=s interest in assuring the defendant=s appearance at trial. *See Simpson*, 77 S.W.3d at 896 (citing *Balboa v. State*, 612 S.W.2d 553, 557 (Tex. Crim. App. 1981)). Although both the federal and state constitutions permit the denial of pretrial bail under certain circumstances, when bail is available it is excessive if set in an amount greater than is reasonably necessary to satisfy the government=s legitimate interests. *See United States v. Salerno*, 481 U.S. 739, 753-54 (1987) (construing Eighth Amendment); 41 Dix and Dawson '' 16.11, .12 (discussing federal and state constitutional right to bail).

In reviewing a trial court=s ruling for an abuse of discretion, an appellate court will not intercede as long as the trial court=s ruling is at least within the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh=g). But an abuse of discretion review requires more of the appellate court than simply deciding that the trial judge did not rule

---

[3] If Beard can afford a surety bond in the amount of $8,000,000, it is uncertain that a surety can be found who is able and willing to write a bond in that amount. Even the State does not argue that Beard can deposit $8,000,000 in cash. *See* Tex. Code Crim. Proc. Ann. art. 17.02 (West 1977) (defining Abail bond@).

arbitrarily or capriciously. *Id*. at 392. The appellate court must instead measure the trial court=s ruling against the relevant criteria by which the ruling was made. *Id*.

In deciding whether the district court=s order in this cause is within the zone of reasonable disagreement, we cannot disregard the extraordinary amount of bail ordered. At oral argument, Beard=s counsel suggested without contradiction by the State that $8,000,000 is the largest bail ever set in a reported Texas criminal case. This amount is more than eight times higher than the highest bail previously determined to be reasonable in a reported Texas capital murder case. Such a dramatic departure from prior practice is at least suggestive of an abuse of discretion.

Having considered the evidence before the district court in the light most favorable to that court=s ruling, having measured the district court=s ruling against the criteria informing the setting of pretrial bail, and having considered the bail deemed appropriate in other capital murder cases, we conclude that the district court abused its discretion by setting Beard=s bail at $8,000,000. We therefore sustain Beard=s points of error and reverse the district court=s order. We order that bail be set at $500,000, subject to such reasonable terms and conditions as may be determined by the district court.

_____

Mack Kidd, Justice

Before Justices Kidd, B. A. Smith and Yeakel

Reversed and Rendered

Filed:   October 24, 2002

**14**

Publish