# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-07-00590-CR

---

## Ex parte Christopher Lee Murray

---

## FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT
## NO. 12900, HONORABLE REVA TOWSLEE CORBETT, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Christopher Lee Murray is confined while awaiting trial on an indictment accusing him of capital murder and injury to a child. Murray applied for a writ of habeas corpus complaining that the bail set in this case, $1,000,000, is excessive. The writ issued, and after a hearing, the district court denied relief. In a single point of error, Murray contends that the bail is unreasonably high and the trial court erred by failing to reduce it. We will reverse and remand the cause to the trial court.

The Texas Constitution guarantees that "[a]ll prisoners shall be bailable by sufficient sureties, unless for capital offenses, when the proof is evident." Tex. Const. art. I, § 11; *see* Tex. Code Crim. Proc. Ann. art. 1.07 (West 2005). The State does not claim that the proof is evident in this case. Therefore, Murray is entitled to reasonable bail, that is, bail that is not excessive. U.S. Const. amend VIII; Tex. Const. art. I, § 13; Tex. Code Crim. Proc. Ann. art. 1.09 (West 2005).

The setting of bail is committed to the discretion of the trial court, but the exercise of that discretion is governed by the constitution and by statute. Tex. Code Crim. Proc. Ann. art. 17.15 (West 2005). Bail should be sufficiently high to give reasonable assurance that the undertaking will be complied with, but not so high as to make it an instrument of oppression. *Id*. art. 17.15(1), (2); *see Ex parte Vasquez*, 558 S.W.2d 477, 479 (Tex. Crim. App. 1977) (primary purpose of bail is to secure defendant's presence for trial). The nature of the offense and the circumstances under which it was committed are factors to be considered, as is the future safety of the community and the victim. Tex. Code Crim. Proc. Ann. art. 17.15(3), (5). The defendant's ability to pay may also be considered, but it is not in itself controlling. *Id*. art. 17.15(4); *Ex parte Gentry*, 615 S.W.2d 228, 231 (Tex. Crim. App. 1981). In applying these guidelines, the trial court may give consideration to such evidentiary matters as the defendant's work record, ties to the community, previous criminal record, and record of appearances in the past. *Ex parte Williams*, 619 S.W.2d 180, 183 (Tex. Crim. App. 1981); *Gentry*, 615 S.W.2d at 231; *Ex parte Parish*, 594 S.W.2d 872, 873 (Tex. Crim. App. 1980); *Ex parte Keller*, 595 S.W.2d 531, 533 (Tex. Crim. App. 1980).

The burden is on the accused to prove that bail is excessive. *Ex parte Rubac*, 611 S.W.2d 848, 849 (Tex. Crim. App. 1981). We review the trial court's ruling for an abuse of discretion. *Id*. at 850.

The indictment contains two counts, each subdivided into two paragraphs. Count one alleges that appellant intentionally caused the death of the deceased, who was younger than six years of age, by inflicting blunt force trauma (paragraph one) and striking the body (paragraph two) in an

2

unknown manner. *See* Tex. Penal Code Ann. § 19.03(a)(8) (West Supp. 2007). Count two alleges that appellant, in the same two ways, intentionally or knowingly caused serious bodily injury to the deceased. *See id*. § 22.04(a)(1). The lead investigator, reading from the autopsy report, testified that the deceased child, who was two years old, suffered fractures of the skull, several ribs, and a vertebra, and had 120 or more contusions to his head, chest, abdomen, back, and extremities. There was also a contusion of the pancreas, and lacerations of the liver and duodenum. No other evidence was offered regarding the nature or circumstances of the alleged offense.

Murray's only witness was his aunt, Josie Marie Silva. She testified that Murray was raised by her parents, Murray's maternal grandparents. She said that Murray had lived in Bastrop County with her parents for one-and-a-half years, but her testimony was unclear as to when. Silva said that if Murray were to be released on bond, he would live with her and her family in Harris County, where she had found him work. One can infer from Silva's testimony that most of Murray's extended family lives in Harris County.

Silva expressed the opinion that Murray is not a violent person, and she said that she had never seen him lose his temper. Silva has three children ranging in age from sixteen months to nine years, and she would not hesitate to leave them in Murray's care. During cross-examination, Silva acknowledged that Murray had been arrested for assaulting her in 1997, but she said that she had provoked the incident and that the charges had been dismissed.

Murray has two Harris County convictions for possession of marihuana and one for burglary of a motor vehicle, the most recent of which was in 1998. At the time of his arrest in the instant case, he had two outstanding traffic warrants. While testifying, the investigating officer

mentioned an offense report from 2006 regarding an alleged assault by Murray against the mother of the deceased child, but no further details were offered.

Murray is represented by appointed counsel. Silva testified that Murray has no money except for $3,000, which she raised by selling his car. She estimated that with the help of his family, Murray could afford a $40,000 bond.

At the conclusion of the testimony, the State argued that the deceased's injuries reflected an "explosion of anger" and urged the court to leave bail at $1,000,000 because Murray represents a public safety risk. Defense counsel responded that the State had offered no evidence that Murray committed any act of violence against the deceased and asked that bail be reduced to no more than $50,000. The court explained its decision to leave bail at $1,000,000 as follows:

> I feel that based on the seriousness of this offense and based upon the information and evidence I received today that that bond is adequate and sufficient. You could be no-bonded, you're not, so you have a bond, and I believe that it's one that if your family members truly wish to band together and to help you that they would have the ability to gather resources. I don't see that they've tried that yet and I'm not going to disturb it. The bond stands.

### *Ability to pay*

The factor on which the court placed greatest emphasis was Murray's ability to pay or, more precisely, Murray's failure to show an unsuccessful effort to raise the funds necessary to make bail in the existing amount. The evidence was undisputed, however, that Murray has only $3,000. Silva testified that Murray's family could afford a bond of $40,000. There is no reason to believe that Murray's family can afford, even collectively, a $1,000,000 bail bond.

4

*Nature and circumstances of offense*

The indictment establishes as a matter of law that there is probable cause to believe that Murray is guilty of capital murder and injury to a child. *See Ex parte Plumb*, 595 S.W.2d 544, 545 (Tex. Crim. App. 1980). Physical abuse of an infant or young child is abhorrent conduct, and the deceased in this case suffered massive injuries. We know nothing more, however, about the circumstances of the alleged offense.

*Community safety*

As this Court has observed, there is a tension between article 17.15(5), which states that the future safety of the victim and the community shall be considered in setting bail, and the constitutional right to bail. *Ex parte Ramirez*, No. 03-99-00172-CR, 1999 Tex. App. LEXIS 4457, at *9 (Tex. App.—Austin June 17, 1999, no pet.) (not designated for publication). A magistrate may consider community safety as only one factor in determining a reasonable bail; if the magistrate deliberately sets bail in an amount the accused cannot meet in order to assure his continued incarceration and for no other reason, the accused is denied his constitutional right to reasonable bail. *Id*. at *10; *see Ex parte Harris*, 733 S.W.2d 712, 714 (Tex. App.—Austin 1987, no pet.).

The State points to the injuries suffered by the deceased as evidence of Murray's propensity for violence and his potential danger to others. There is evidence that Murray was arrested for assaulting Silva in 1997, but these charges were dismissed. Murray was reported to have assaulted the mother of the deceased child in 2006, but there is no evidence that he was arrested or charged. Murray has a criminal record, but only for nonviolent offenses.

*Securing Murray's presence*

The primary purpose of bail is to secure the presence of the defendant. *Vasquez*, 558 S.W.2d at 479. If Murray has a predisposition to flee, he has ample incentive to do so in this case, where he faces a possible death sentence and a minimum punishment of life imprisonment if convicted of capital murder.[1] The injury to a child offense also carries a possible life sentence. On the other hand, except for the traffic tickets, there is no evidence that Murray ever failed to appear in the other criminal cases in which he has been involved.

There is no evidence that Murray has any significant ties to Bastrop County. Murray would live in Harris County with Silva should he be released on bail.

*Bail in other recent cases*

In *Ex parte Simpson*, the capital murder defendant was a juvenile certified for trial as an adult. 77 S.W.3d 894, 895 (Tex. App.—Tyler 2002, no pet.). He was a life-long resident of the county, but he was also a member of a violent street gang and had written letters from jail that the court of appeals described as "incredibly shocking." *Id*. The court, having previously determined that a $1,000,000 bail was excessive, affirmed the trial court's decision to set bail at $600,000. *Id*. at 898.

In *Cooley v. State*, the defendant was accused in three indictments of soliciting the capital murder of his business partner three times over a nineteen-month period. 232 S.W.3d 228, 230 (Tex. App.—Houston [1st Dist.] 2002, no pet.). Evidence was introduced at the habeas corpus hearing to show that the defendant had paid six different people $24,000 to kill the intended victim.

---

[1] There is no evidence as to whether the State intends to seek the death penalty.

*Id*. at 237. The court of appeals affirmed the trial court's decision to set bail at $250,000 per indictment, or a total of $750,000. *Id*. at 238.

In *Ex parte Beard*, the defendant was accused of the capital murder of her wealthy husband. 92 S.W.3d 566, 567 (Tex. App.—Austin 2002, pet. ref'd). The evidence at the hearing included the confession of the woman who shot the deceased pursuant to an alleged agreement with the defendant. *Id*. at 569. The record showed that the defendant had inherited or received during her marriage to the deceased valuable real estate and a substantial amount of cash. *Id*. at 569-70. This Court found that the trial court abused its discretion by setting bail at $8,000,000 and ordered bail reduced to $500,000.

The State refers us to *Ex parte Pulte*, No. 02-03-00202-CR, 2003 Tex. App. LEXIS 9631 (Tex. App.—Fort Worth 2003, no pet.) (mem. op., not designated for publication). In this case, the evidence showed that the defendant, three months after being released on bond pending his trial for terroristic threat and stalking, purchased a handgun and twice attempted to hire someone to kill the complainant in the stalking case. *Id*. at *5. The defendant was shown to have substantial assets and had displayed "a disturbing lack of candor with the trial court." *Id*. The court of appeals concluded that the trial court did not abuse its discretion by keeping the defendant's bail at $1,000,000 for each solicitation of capital murder indictment. *Id*.

In *Salazar v. State*, the defendant was accused of the capital murder of her infant daughter. No. 07-03-00545-CR, 2004 Tex. App. LEXIS 4620 (Tex. App.—Amarillo 2004, pet. ref'd) (mem. op., not designated for publication). She was unemployed, and her family could afford a bond of no more than $50,000. *Id*. at *4. The court of appeals concluded that a $600,000

bail, although high, was not an abuse of discretion given the nature of the offense and "the alternatives presented to the trial court," which it did not describe. *Id*. at *4-5.

The court of criminal appeals once observed that it "has yet to condone a bail amount even approaching seven figures, even in a capital case." *Ludwig v. State*, 812 S.W.2d 323, 324 (Tex. Crim. App. 1991) (plurality op.) (reducing bail in capital murder case from $1,000,000 to $50,000). That was written seventeen years ago, and bail amounts have since tended to increase generally, but seven-figure bail amounts are still rare. Few individuals can afford bail of $1,000,000 or more, and it is therefore difficult to justify bail in such an amount in light of the constitutional and statutory admonitions that bail is not to be excessive or used as an instrument of oppression.

It is clear from the record that the $1,000,000 bail in this case is beyond Murray's ability to pay. On the other hand, the crime of which Murray is accused is a very serious one, both factually and in regard to the potential punishment. Murray has shown no real ties to the community. Although Murray has no record of convictions for violent crimes, there is evidence that he has assaulted two women, including the mother of the deceased child. Considering the evidence adduced in the light most favorable to the court's ruling, and having measured that ruling against the criteria informing the setting of pretrial bail, we believe that the trial court could reasonably conclude that bail should be higher than the $40,000 to $50,000 sought by Murray, but that the court abused its discretion by maintaining Murray's bail at $1,000,000. Therefore, we sustain Murray's point of error, reverse the district court's order, and remand for further proceedings on the writ of habeas corpus. Upon remand, the trial court shall enter an order setting bail in a reasonable amount

8

consistent with this opinion. Murray may appeal the court's new order in the same manner as he appealed the order now before us.

_____

G. Alan Waldrop, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop;
     Dissenting Opinion by Justice Pemberton

Reversed and Remanded

Filed:   March 20, 2008

Do Not Publish