# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00795-CR

**Ex parte Marcus Hanson**

**FROM THE DISTRICT COURT OF BELL COUNTY, 426TH JUDICIAL DISTRICT
NO. 79628, HONORABLE FANCY H. JEZEK, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Marcus Hanson was indicted for aggravated assault with a deadly weapon, a second-degree felony, after he allegedly attacked his wife and struck her repeatedly with a handgun. *See* Tex. Penal Code § 22.02(a)(2), (b). After a magistrate judge set bail at $200,000, Hanson filed an "Application for Writ of Habeas Corpus Seeking Bail Reduction." The trial court held a hearing on the application, at which Hanson's wife, niece, and two friends testified. After the hearing, the trial court signed an order denying Hanson's application, and Hanson now appeals from that order. We will affirm the trial court's order denying Hanson's application for writ of habeas corpus.

### APPLICABLE LAW AND STANDARD OF REVIEW

In his sole point of error, Hanson contends that the trial court abused its discretion in denying his application for writ of habeas corpus because the bail set in this case is excessive. Both the United States and Texas Constitutions prohibit excessive bail. *See* U.S. Const. amend. VIII; Tex. Const. art. I, § 13. The primary purpose of bail is to secure the presence of the defendant in court to answer the accusations against him. *Ex parte Ivey*, 594 S.W.2d 98, 99 (Tex. Crim. App.

1980).  While bail should be sufficiently high to give reasonable assurance that the defendant will appear, it should not be used as an instrument of oppression.  *Id.*  In setting bail, the trial court must strike a balance between the defendant's presumption of innocence and the State's interest in assuring the defendant's appearance at trial.  *Ex parte Beard*, 92 S.W.3d 566, 573 (Tex. App.—Austin 2002, pet. ref'd).

Article 17.15 of the Texas Code of Criminal Procedure provides that the trial court must observe the following rules when exercising its discretion in setting bail:

> 1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.
>
> 2. The power to require bail is not to be so used as to make it an instrument of oppression.
>
> 3. The nature of the offense and the circumstances under which it was committed are to be considered.
>
> 4. The ability to make bail is to be regarded, and proof may be taken upon this point.
>
> 5. The future safety of a victim of the alleged offense and the community shall be considered.

Tex. Code Crim. Proc. art. 17.15.  The Texas Court of Criminal Appeals has held that the trial court may also consider the defendant's work record, family ties, length of residency, criminal record, and conformity with previous bond conditions.  *See Ex parte Rubac*, 611 S.W.2d 848, 849 (Tex. Crim. App. 1981).  The defendant has the burden of proof to show that the bail set is excessive.  *Id.*

We review a trial court's ruling in setting bail for an abuse of discretion.  *See Ex parte Gill*, 413 S.W.3d 425, 428 (Tex. Crim. App. 2013); *Beard*, 92 S.W.3d at 573.  We view the evidence

in the light most favorable to the trial court's ruling. *Beard*, 92 S.W.3d at 573. We will not disturb the ruling if it is within the zone of reasonable disagreement. *Id.*

## DISCUSSION

In reviewing the trial court's order for an abuse of discretion, we will consider the factors enumerated in Article 17.15 and in *Rubac*.

**Nature and Circumstances of the Offense**

At the hearing on Hanson's habeas application, the State offered, and the trial court admitted, without objection, a voluntary statement (the Statement) both handwritten and signed by Stormi Hanson, appellant's wife and the alleged victim.[1] The Statement explains that Hanson and Stormi had agreed to "an open relationship to try to help fix [their] marriage, which [had] been rocky lately." The Statement then describes Hanson's arrival at their home and the subsequent assault. According to the Statement, Hanson threw Stormi on the floor "and proceeded to kick and punch [her] in various places." Hanson also struck Stormi's face multiple times with a black handgun and struck her "in various places" with a brown handgun. The Statement alleges that Hanson dragged Stormi by her hair from room to room while continuing to punch and kick her. In the Statement, Stormi explains that Hanson "finally let [her] go" but would not let her take her cell phone. Stormi walked to a neighbor's house, and the neighbors called the police and an ambulance. The Statement concludes, "I wish to press charges at this time."

---

[1] Because she shares a surname with appellant, we will refer to the alleged victim as "Stormi."

3

The State also introduced several photographs without objection during the hearing. They depict blood around the home, hair and blood on a handgun, and Stormi's injuries, including her head and face covered in blood and a swollen black eye. Additionally, the State provided testimony that two handguns were seized as evidence.

At the hearing Stormi testified that Hanson slapped her, kicked her, and cut off her hair during the assault, but claimed that he never struck her with a handgun. She also testified that she sought medical treatment after the assault and received stitches and staples in her head at the hospital. Stormi testified that she did not remember writing and signing the Statement, although she admitted that it was her handwriting and signature. In addition, Hanson introduced an affidavit of non-prosecution, signed by Stormi, in which Stormi claims that she was "not afraid of Marcus Hanson" and that Hanson "never used or exhibited a deadly weapon during the alleged assault."[2]

Although Stormi denied at the hearing and in her affidavit that Hanson struck her with a handgun, and although she tried to minimize the assault in her testimony, the photographs admitted into evidence corroborate Stormi's initial statement. Specifically, the photographs of Stormi's injuries suggest a sustained and vicious assault, and the photograph of what appears to be hair and blood on a handgun corroborates the Statement's allegations that Hanson struck Stormi repeatedly with a handgun. The severe nature of the charged offense, aggravated assault with a

---

[2] In addition, near the conclusion of the hearing, the State proffered additional evidence, without objection, including testimony that a police officer met with Stormi at the hospital, that she appeared to him as she appears in the photographs, and that "she did make an outcry as contained in" the Statement.

4

deadly weapon, combined with the evidence tending to corroborate Stormi's initial written account, therefore supports the trial court's denial of Hanson's habeas application.

**Hanson's Ability to Make Bail**

At the hearing, Stormi testified that she and Hanson do not have a joint checking account, that she believed that he had a separate checking account but did not know how much was in that account, and that she did not know whether he had a savings account. According to Stormi, she paid their bills from her separate account, Hanson owned no real property, and they lived in a rental home and shared a vehicle with a lien on it. Stormi testified that Hanson was a "day trader" but that she did not know how much money Hanson made from "buying stocks." Stormi also testified that Hanson was working on an online associate's degree with "a full-ride academic scholarship." On cross-examination, Stormi testified that she had been providing commissary goods and money to Hanson during his incarceration and that she had paid for over 200 jail calls from him. In addition, Hanson's niece testified at the hearing that she and her mother together would be able to contribute $3,000 to $4,000 dollars toward Hanson's bond, and one of Hanson's friends testified that he would be willing to contribute to Hanson's bond, although he did not know how much he could afford to contribute.

Although Stormi testified that Hanson owned no real property, she stated that she did not know how much money Hanson had in his checking account or how much money he made as a day trader. In addition, her testimony suggests that Hanson had minimal expenses, because Stormi paid their bills and Hanson had a "full-ride" scholarship for his online studies. Therefore, we conclude that Hanson failed to meet his burden of demonstrating an inability to meet bail, and we

5

further conclude that this factor does not weigh in favor of finding that the court abused its discretion in denying Hanson's habeas application.

**Safety of the Victim and Community**

Although Stormi testified that Hanson did not strike her with a handgun and although she signed an affidavit of non-prosecution, her initial statement and the photographs of her injuries suggest that she was the victim of a severe assault. The fact that she now denies the severity of the assault, combined with the fact that she no longer wishes the State to prosecute Hanson after she accepted over 200 jails calls from him, could have led the trial court to conclude that Stormi is not willing or able to protect herself from future violence from Hanson. In addition, although Hanson's niece and two of his friends testified that Hanson would not be a danger to the community if he were released on bond, none of those witnesses had known Hanson for more than nine months. Moreover, Hanson's niece testified that Hanson and Stormi shared "the epitome of a marriage," an evaluation contradicted by Stormi's injuries and her indication in the Statement that her marriage with Hanson was so "rocky lately" that they "agreed to an open relationship." Therefore, the trial court could have concluded that Hanson's niece was not aware of his true character. Given that none of Hanson's witnesses had known him for more than nine months, the court could have further concluded that Hanson failed to meet his burden of showing that he would not be a threat to Stormi and the community if released.[3] This factor does not weigh against the court's ruling.

---

[3] We also note that Hanson's niece presented only ambiguous testimony concerning whether Hanson would comply with the court's conditions of bail if released. She testified that Hanson had expressed to her "that it would basically suck, like, if he had an ankle monitor on" but that she was able to bring him "back down to the reality level that that's, you know, the conditions that he would just have to go by."

**Remaining *Rubac* Factors**

The trial court heard minimal evidence concerning Hanson's work record, family ties, length of residency, criminal record, and conformity with previous bond conditions. As noted above, Stormi testified that Hanson is a "day trader" and online student, but she did not know how much money he made through his trades. According to Stormi, she and Hanson have only lived in Texas since December 2017, less than a year before the hearing. In addition, Hanson's niece testified that he had been a positive role model for her, but that she had only known Hanson for no more than nine months.[4] We conclude that these factors do not weigh against the trial court's ruling.

**Summary of Factors**

The trial court heard evidence that: Hanson was accused of aggravated assault with a deadly weapon, a second-degree felony; Hanson caused multiple injuries to Stormi that required medical attention; Stormi did not know what financial resources Hanson had access to and Hanson presented no evidence regarding his lack of resources; and none of Hanson's witnesses had known him for more than nine months. Viewing the record before us in the light most favorable to the trial court's ruling and bearing in mind that Hanson had the burden of proof to show that his bail is excessive, we cannot conclude that the trial court abused its discretion in denying Hanson's habeas application.

Our conclusion is consistent with bail amounts set in other cases. For example, in *Ex parte Everage*, No. 03-17-00879-CR, 2018 WL 1788795, at *1 (Tex. App.—Austin Apr. 13,

---

[4] Hanson's niece also admitted at the hearing that she had been convicted of felony harassment of a public servant.

2018, no pet.) (mem. op., not designated for publication), this Court considered whether the amounts of bail set for evading arrest with a vehicle, aggravated robbery with a deadly weapon, and aggravated assault on a public servant were excessive. In our review we considered several comparable cases.[5] While we ultimately reduced the bail for aggravated robbery from $500,000 to $250,000 and the bail for aggravated assault from $500,000 to $150,000, our analysis shows that the bail amount is highly fact-dependent and that $200,000 is not outside the range of reasonable disagreement for a charge of aggravated assault with a deadly weapon. *See Ex parte Owen*, No. 10-16-00188-CR, 2016 WL 6953107, at *3–4 (Tex. App.—Waco Nov. 23, 2016, no pet.) (mem. op., not designated for publication) (upholding bail of $1 million for assault with bodily injury against a family member with a prior conviction despite the fact that "the victim testified that she was not afraid of [the defendant] and was not even certain that he had committed the offense against her").

Because we cannot conclude that Hanson met his burden of showing that his bail is excessive or that the court abused its discretion in denying his application for writ of habeas corpus, we overrule his sole point of error.

---

[5] In our review, we noted that appellate courts have upheld the following bail amounts: $200,000 for aggravated robbery; $500,000 for aggravated assault; $250,000 for aggravated assault on a public servant; $750,000 for aggravated assault with a deadly weapon; $750,000 for aggravated robbery; and $1.9 million for aggravated robbery. *See Ex parte Everage*, No. 03-17-00879-CR, 2018 WL 1788795, at *6–9 (Tex. App.—Austin Apr. 13, 2018, no pet.) (mem. op., not designated for publication).

**CONCLUSION**

We affirm the trial court's order denying Hanson's application for writ of habeas corpus.

_____

Chari L. Kelly, Justice

Before Chief Justice Rose, Justices Kelly and Smith

Affirmed

Filed:   March 7, 2019

Do Not Publish

9