# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-15-00265-CR
NO. 03-15-00277-CR
NO. 03-15-00288-CR

**Robie Lee Lawhon, Appellant**

**v.**

**The State of Texas, Appellee**

FROM THE DISTRICT COURT OF MILAM COUNTY, 20TH JUDICIAL DISTRICT
NOS. 36,868, 24,712 & 24,713, HONORABLE JOHN YOUNGBLOOD, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In each of the above causes, appellant Robie Lee Lawhon, who is confined while awaiting trial on charges that he committed the offenses of manslaughter and aggravated assault,[1] filed an application for writ of habeas corpus seeking a reduction in his bail bond, which was set at $250,000 for each of the manslaughter offenses and $100,000 for the aggravated-assault offense. Following a hearing, the district court granted the application, reducing the amount of bond to $150,000 for each of the manslaughter offenses and $20,000 for the aggravated-assault offense. In a single issue on appeal, Lawhon asserts that the amount of bond in each cause remains excessive. We will affirm the district court's order in each cause.

---

[1] *See* Tex. Penal Code §§ 19.04 (manslaughter), 22.02 (aggravated assault).

## STANDARD AND SCOPE OF REVIEW

We review a trial court's ruling on a request to reduce bail under an abuse-of-discretion standard.[2] To determine whether the trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable.[3] We will not disturb the trial court's ruling if it was within the zone of reasonable disagreement.[4]

Both the federal and state constitutions prohibit "excessive" bail.[5] Bail is considered excessive if it is "set in an amount greater than is reasonably necessary to satisfy the government's legitimate interests."[6] In addition to the constitutional prohibition against excessive bail, the Texas Legislature has imposed the following statutory requirements: (1) the bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with; (2) the power to require bail is not to be so used as to make it an instrument of oppression; (3) the nature of the offense and the circumstances under which it was committed are to be considered; (4) the ability to make bail is to be regarded, and proof may be taken upon this point; and (5) the future safety of a

---

[2] *See Ex parte Rubac*, 611 S.W.2d 848, 850 (Tex. Crim. App. 1981); *Ex parte Melartin*, 464 S.W.3d 789, 792 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *Clemons v. State*, 220 S.W.3d 176, 178 (Tex. App.—Eastland 2007, no pet.) (per curiam); *Ex parte Beard*, 92 S.W.3d 566, 568 (Tex. App.—Austin 2002, pet. ref'd).

[3] *Ex parte Hunt*, 138 S.W.3d 503, 505 (Tex. App.—Fort Worth 2004, pet. ref'd) (citing *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)).

[4] *Clemons*, 220 S.W.3d at 178; *Beard*, 92 S.W.3d at 573.

[5] *See* U.S. Const. amend. VIII; Tex. Const. art. I, § 13.

[6] *Beard*, 92 S.W.3d at 573.

victim of the alleged offense and the community shall be considered.[7]  Other factors the trial court

may consider include:  (1) the accused's work record; (2) the accused's family and community ties;

(3) the accused's length of residency; (4) the accused's prior criminal record; (5) the accused's

conformity with previous bond conditions; and (6) aggravating circumstances alleged to have been

involved in the charged offense.[8]  The burden is on the accused to prove that bail is excessive in light

of the above factors,[9] and we will not find an abuse of discretion and reduce the amount of bail set

by the trial court unless the applicant has satisfied this burden.[10]  We proceed to review the evidence

presented at the bail-reduction hearing in light of these considerations.

## ANALYSIS

**Nature and circumstances of offenses**

The "primary factors" that courts are to consider when evaluating the reasonableness

of bail are the nature of the offenses and the punishments that can be imposed for committing them.[11]

---

[7] Tex. Code Crim. Proc. art. 17.15.

[8] *See Maldonado v. State*, 999 S.W.2d 91, 93 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) (citing *Rubac*, 611 S.W.2d at 849-50).

[9] *See Rubac*, 611 S.W.2d at 849; *Beard*, 92 S.W.3d at 568.

[10] *See Ex parte Gentry*, 615 S.W.2d 228, 231 (Tex. Crim. App. 1981) (reducing bail amount after reviewing court was "completely satisfied that petitioner discharged her burden of showing her entitlement" to bail reduction); *Ex parte Welch*, 729 S.W.2d 306, 310 (Tex. App.—Dallas 1987, no pet.) (refusing to reduce bail amount when reviewing court found, after considering "all of the evidence and factors relevant to determining the amount of bond," that "applicant has failed to satisfy his burden of showing that the trial court abused its discretion in refusing to lower applicant's bond").

[11] *See Rubac*, 611 S.W.2d at 849; *Melartin*, 464 S.W.3d at 792.

Here, Lawhon is alleged to have killed two people and broken the back of a third person when his vehicle collided with the victims' vehicle as a result of him "failing to control the speed of his vehicle and illegally passing on the right shoulder" of a road. Based on these allegations, Lawhon now faces two indictments for the offense of manslaughter and the State currently seeks another indictment for the offense of aggravated assault causing serious bodily injury. Both manslaughter and aggravated assault are second-degree felonies punishable by two to twenty years' confinement and a $10,000 fine.[12] Thus, these are serious offenses and Lawhon could face up to twenty years in prison for each offense if convicted.

When reviewing the appropriate bond for a particular offense, appellate courts often compare bond amounts in other cases involving offenses of the same degree. This is because such offenses carry the same punishment range, which is a proper consideration in determining the nature of the offense charged.[13] Perhaps reflecting the wide range of offenses that are categorized as second-degree felonies, Texas courts have approved bond amounts as low as $10,000 and as high as $200,000 for second-degree felony offenses.[14] The $20,000 bond set by the district court for the

---

[12] *See* Tex. Penal Code §§ 12.33, 19.04(b), 22.02(b).

[13] *See Ex parte Charlesworth*, 600 S.W.2d 316, 317 (Tex. Crim. App. 1980); *Ex parte Vasquez*, 558 S.W.2d 477, 480 (Tex. Crim. App. 1977); *Maldonado*, 999 S.W.2d at 95.

[14] *See, e.g.*, *Golden v. State*, 288 S.W.3d 516, 521 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (reducing bail to $75,000 in second-degree-felony possession-of-controlled-substance case); *Ex parte Sabur-Smith*, 73 S.W.3d 436, 441 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (reducing bail to $30,000 in second-degree-felony sexual-assault case); *Ex parte Bogia*, 56 S.W.3d 835, 836 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (reducing bail to $10,000 for second-degree-felony theft); *see also Ex parte Rincon*, No. 04-13-00715-CR, 2014 Tex. App. LEXIS 5649 (Tex. App.—San Antonio May 28, 2014, no pet.) (mem. op., not designated for publication) (approving $100,000 bond for manslaughter charge); *Ex parte Jozwiak*, No. 05-04-01570-CR, 2005 Tex. App. LEXIS 402 (Tex. App.—Dallas Jan. 20, 2005, no pet.) (not designated for

aggravated-assault charge is well within the range of bond amounts approved for other second-degree felonies, while the $150,000 bond set by the district court for each of the manslaughter charges, although on the higher end of the range, is comparable to bond amounts approved in other manslaughter cases.

**Ability to make bail**

The ability of an accused to post bail is a factor to be considered, but the inability to make the bail set by the trial court does not automatically render the bail excessive.[15] This is true even if the accused is determined to be indigent.[16] If the ability to make bail in a specified amount controlled, the role of the trial court in setting bail would be unnecessary and the accused would be able to set his own bail.[17] Moreover, this factor will not favor bail reduction when the defendant makes vague references to inability to make bail without detailing his specific assets and financial resources.[18]

---

publication) (approving $200,000 bond for each of ten manslaughter charges); *Ex parte Leonides*, No. 03-01-00641-CR, 2002 Tex. App. LEXIS 944, at *4 (Tex. App.—Austin Feb. 7, 2002, no pet.) (not designated for publication) (approving bail set at $175,000 for intoxication-manslaughter charge).

[15] *See Ex parte Vance*, 608 S.W.2d 681, 683 (Tex. Crim. App. 1980); *Maldonado*, 999 S.W.2d at 96.

[16] *Charlesworth*, 600 S.W.2d at 317.

[17] *Hunt*, 138 S.W.3d at 506.

[18] *See Cooley v. State*, 232 S.W.3d 228, 236 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

In this case, Lawhon did not testify regarding his ability to make bail. Instead, he relied on the testimony of Catherine Martinez, his mother. Martinez testified that she works as a manager for Security Finance, a loan company, in Rockdale. According to Martinez, she has been "trying to [get] a couple of loans and other things to bond [Lawhon] out."[19] However, she claimed that it was "hard for [her] to get loans," because "other loan companies will not let [her] have loans." Martinez also testified that she owns "1.3 acres of land with a trailer on it" but has been unable to use that as a source of financing because of issues with her bank. Martinez further claimed that her family members, consisting of her brother, sister, and mother, "don't have any" resources to assist her. Martinez provided no testimony regarding her income or savings. Nor did she provide any testimony regarding Lawhon's income or savings. On the other hand, Martinez did provide some testimony from which the district court could have reasonably inferred that Lawhon had at least some income. According to Martinez, Lawhon had attended Texas State Technical College in Waco, had been employed at the time of the collision by a contracting company in Milano, and had, prior to that job, enjoyed what defense counsel characterized as "successful employment" since high school. Without more specific and detailed evidence related to Lawhon's ability or inability to make bail, we cannot say that the district court would have abused its discretion in finding that this factor did not favor a greater reduction in bail.[20]

---

[19] A local bail bondsman, Lisa Roden, testified that she would not be able to authorize a bond amount greater than $50,000 in each of Lawhon's three cases. Martinez testified that she believed she would be able to afford that amount.

[20] *See Ex parte Chavfull*, 945 S.W.2d 183, 186 (Tex. App.—San Antonio 1997, no pet.) ("We don't know what his bank account is, if he has a bank account, if he owns stocks. We know nothing about the defendant's financial condition, that is *his* financial condition. It is not incumbent upon the family to make bond, although, in reality, they often do. He has not proven the bond

**Sufficient bail to assure appearance but not oppress**

The primary purpose of requiring bail is to secure the presence of the accused at trial on the offenses charged.[21]  Thus, the amount of bail must be high enough to give reasonable assurance that the accused will appear for trial as required.[22]  However, while bail should be sufficiently high to give reasonable assurance that the accused will appear, the power to require bail should not be used as an instrument of oppression.[23]  This occurs when the trial court sets bail at an amount "for the express purpose of forcing appellant to remain incarcerated" pending trial or appeal.[24]

In claiming that the amount of bail was oppressive in this case, Lawhon cites to two older cases in which the Court of Criminal Appeals found the amount of bail to be excessive.[25]  However, as this Court has observed in the past, "'Case law is of relatively little value in addressing the ultimate question of the appropriate amount of bail in a particular case' because appellate decisions on bail matters [have] often [been] brief and avoid[ed] extended discussions, and because

---

is excessive as to [himself]." (emphasis added)); *Eggleston v. State*, 917 S.W.2d 100, 102 (Tex. App.—San Antonio 1996, no pet.) (observing that "[t]he testimony of appellant's mother is inconclusive on the ability of appellant to pay a substantial bail").

[21]  *Ex parte Rodriguez*, 595 S.W.2d 549, 550 (Tex. Crim. App. 1980).

[22]  *Charlesworth*, 600 S.W.2d at 317.

[23]  *Ex parte Ivey*, 594 S.W.2d 98, 99 (Tex. Crim. App. 1980).

[24]  *See Ex parte Harris*, 733 S.W.2d 712, 714 (Tex. App.—Austin 1987, no pet.) (per curiam).

[25]  *See Rubac*, 611 S.W.2d at 850 (reducing bail from $100,000 to $25,000 in drug-possession case); *Ex parte Bufkin*, 553 S.W.2d 116, 118 (Tex. Crim. App. 1977) (reducing bail from $150,000 to $15,000 in conspiracy-to-commit-murder case).

7

the 'cases are so individualized that generalization from results reached in others is difficult.'"[26] We find nothing in the cases cited by Lawhon—neither of which involved homicides—that compels us to conclude that the district court abused its discretion on the facts and circumstances presented here.

Moreover, there is nothing in the record to indicate that the district court set bail at an amount "for the express purpose of forcing appellant to remain incarcerated" pending trial. On the contrary, the district court reduced the amount of bail by $100,000 in each of the manslaughter cases and by $80,000 in the aggravated-assault case, which is consistent with an attempt to make bail more affordable for Lawhon. The district court made no statement indicating that it was refusing to further reduce the bond amount for the express purpose of keeping Lawhon incarcerated, and the record provides no basis for us to infer otherwise.[27]

**Future safety of the victims and the community**

This factor does not appear to have been a significant issue at the hearing. Two of the three victims could not be in any future danger from Lawhon because they had been killed in the collision, and no evidence was presented by either side regarding the future safety of the third victim. Regarding the safety of the community, Linda Matysek, the mother of Lawhon's high-school friend, was asked to describe Lawhon's "reputation in the community." She testified as follows: "As far

---

[26] *Beard*, 92 S.W.3d at 571 (citing 41 George E. Dix & Robert O. Dawson, Texas Practice: Criminal Practice and Procedure § 16.51 (2d ed. 2001)).

[27] *See Montalvo v. State*, 315 S.W.3d 588, 596 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *Milner v. State*, 263 S.W.3d 146, 149 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *Ex parte Davis*, 147 S.W.3d 546, 549 (Tex. App.—Waco 2004, no pet.); *Ex parte Milburn*, 8 S.W.3d 422, 426 (Tex. App.—Amarillo 1999, no pet.). *Cf. Harris*, 733 S.W.2d at 714 (finding abuse of discretion where trial court stated, "I'd rather see him in jail than to see someone's life taken. . . .").

as I know, it's fine. I don't really—you know, I only know him as the kid coming to my home like the other boys came all the time." Also, Matysek answered in the negative when asked if she ever had "any legal problems" with Lawhon. On the other hand, Lawhon's mother testified that if Lawhon were released on bail, he would have access to a vehicle. Because the offenses for which Lawhon was charged involved two traffic fatalities and a serious injury to a third victim, the district court could have reasonably inferred that Lawhon's access to a vehicle could pose at least some risk to the safety of the community.

**Other factors**

Lawhon's mother testified that Lawhon has lived in Milam County for 22 years, that he has alternately resided with her and his grandmother during that time, both of whom live "just two miles apart" from each other in Rockdale, and that Lawhon would live with her if he was able to make bail. Lawhon's mother also testified that Lawhon "turned himself in" when the police notified her that they had warrants for his arrest and that Lawhon has cooperated with authorities since the criminal investigation began.

There was also evidence presented regarding Lawhon's criminal history. According to Lawhon's mother, Lawhon had pleaded guilty to and received deferred adjudication for the felony offense of possession of a controlled substance. When asked to describe the circumstances of this offense, Lawhon's mother testified, "A boy . . . got caught selling pills at school and they—he said that Robie had [given] him those pills." Lawhon's mother also testified that Lawhon had successfully completed deferred adjudication for that offense. Further, when asked if Lawhon had "ever absconded from court before," Lawhon's mother answered, "Never."

9

**CONCLUSION**

In summary, although some of the above factors might support a greater reduction in the bail amount than what the district court authorized, others do not. The burden was on Lawhon to prove that bail was excessive,[28] and the district court would not have abused its discretion in finding that he failed to satisfy that burden here. The record supports implied findings by the district court that Lawhon is facing serious charges involving the deaths of two individuals and serious bodily injury to a third, that the amount of bond is within the range of bond amounts approved in similar cases, that Lawhon failed to provide specific and detailed information regarding his ability to make bail, and that he presents at least some risk to the community. On such a record, we cannot conclude that the district court's decision to reduce bail at the specified amounts was outside the zone of reasonable disagreement. In each cause, we overrule Lawhon's sole issue on appeal.

The district court's orders are affirmed.

_____

Bob Pemberton, Justice

Before Chief Justice Rose, Justices Pemberton and Field

Affirmed

Filed: November 20, 2015

Do Not Publish

---

[28] *See Rubac*, 611 S.W.2d at 849; *Beard*, 92 S.W.3d at 568.

10