

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-20-00298-CR
No. 07-20-00299-CR

**EX PARTE BOBBY DION MITCHELL**

On Appeal from the 335th District Court
Bastrop County, Texas
Trial Court No. 1600-335, 1630-335, Honorable Christopher Darrow Duggan, Presiding

March 8, 2021

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and DOSS, JJ.

In two appeals, Appellant Bobby Dion Mitchell challenges the trial court's orders denying his applications for bail reduction through pre-indictment and pretrial habeas corpus.[1] The trial court previously set Appellant's bail at $500,000 on the indicted charge of aggravated assault with a deadly weapon and $100,000 on the unindicted charge of forgery. Appellant sought reduction of these amounts through application for writ of habeas corpus. Both applications were denied; these appeals followed. Because we

---

[1] Originally appealed to the Tenth Court of Appeals, these appeals were transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013).

cannot say the trial court abused its discretion in refusing to reduce the amounts of Appellant's bail, we will affirm the orders denying relief.

## Background

Appellant was indicted for the aggravated assault with a deadly weapon[2] of his wife, M.M., in trial court case number 17,176 and bail was set at $100,000. According to the indictment's enhancement paragraphs, Appellant was convicted in 2002 in a Caldwell County case of two counts of sexual assault and three counts of indecency with a child. Two victims were involved.

After spending about eighty days in the county jail on the aggravated assault charge, Appellant was released on a $100,000 personal bond.[3] The bond was conditioned on Appellant having no contact with M.M. or his twelve-year-old son, B.M. Thereafter, while on personal bond, Appellant allegedly indorsed M.M.'s name to a check in the amount of $17,393.91 without her permission. He was arrested for forgery, a state jail felony,[4] and bail set at $100,000. By order of the trial court, apparently because of

---

[2] *See* TEX. PENAL CODE ANN. § 22.02(a)(2) (West 2019).

[3] Among its findings of fact the trial court stated:

On January 24, 2020, the defendant requested release because of delay in Writ of Habeas Corpus Number 423-7076.

On January 27, 2020, the court granted the defendant's release in Cause Number 423-7076 by granting the defendant a $ l00,000.00 personal bond with the following conditions: No contact with [Appellant's son, B.M. or wife, M.M.]

It therefore appears Appellant's release on personal bond was under Code of Criminal Procedure article 17.151 because of delay rather than by discretionary decision under article 17.15. "Section 17.151 is mandatory. . . . If the State is not ready for trial within 90 days after commencement of detention for a felony, the trial court has two options: to release the defendant upon personal bond or to reduce the amount of bail." *Pharris v. State,* 196 S.W.3d 369, 373 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (citing *Rowe v. State,* 853 S.W.2d 581, 583 (Tex. Crim. App. 1993)).

[4] *See* TEX. PENAL CODE ANN. § 32.21(e-1)(4) (West Supp. 2020).

the forgery charge, Appellant's bail on the aggravated assault charge in case number 17,176 was increased to $500,000. According to Appellant's brief, he has not been indicted for forgery.

Appellant filed an application for pre-indictment writ of habeas corpus on the forgery charge seeking reduction of the $100,000 bail. The application was assigned writ number 1600-335 and was denied following a brief evidentiary hearing on August 31, 2020. Appellant then sought habeas relief from the increased bail of $500,000, on the indicted aggravated assault charge. This application was assigned writ number 1630-335. It was denied following a brief evidentiary hearing of October 15. Appellant appeals from the denial of both writ applications.

Analysis

Through two issues, which we discuss jointly, Appellant argues the trial court abused its discretion by denying his habeas applications for bail reduction in writ numbers 1600-335 and 1630-335. We disagree.

Individuals who are accused of a crime and awaiting trial hold "a strong interest in liberty." *United States v. Salerno,* 481 U.S. 739, 750, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987). The primary purpose of pretrial bail is to secure the appearance of the accused at trial on the offense charged. *See Ex parte Rodriguez,* 595 S.W.2d 549, 550 (Tex. Crim. App. [Panel Op.] 1980). When faced with allegedly excessive bail, an accused may assert his constitutional right[5] to reasonable bail through a pretrial writ of habeas corpus. *Weise*

---

[5] The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. The Texas Constitution guarantees that "[a]ll prisoners shall be bailable by sufficient sureties, unless for capital offenses, when the proof is evident . . . ." TEX. CONST. art. I, § 11.

*v. State,* 55 S.W.3d 617, 619 (Tex. Crim. App. 2001) (citing *Ex parte Keller,* 595 S.W.2d

531, 532-33 (Tex. Crim. App. [Panel Op.] 1980)).

The determination of the amount of bail is guided by statutory and common law

factors. *Ex parte Peyton,* No. 02-16-00029-CR, 2016 Tex. App. LEXIS 4776, at *7-8 (Tex.

App.—Fort Worth May 5, 2016, pet. dism'd) (mem. op., not designated for publication).

The Code of Criminal Procedure provides:

> The amount of bail to be required in any case is to be regulated by the
> court, judge, magistrate or officer taking the bail; they are to be governed
> in the exercise of this discretion by the Constitution and by the following
> rules:
>
> 1. The bail shall be sufficiently high to give reasonable assurance that
> the undertaking will be complied with.
>
> 2. The power to require bail is not to be so used as to make it an
> instrument of oppression.
>
> 3. The nature of the offense and the circumstances under which it was
> committed are to be considered.
>
> 4. The ability to make bail is to be regarded, and proof may be taken
> upon this point.
>
> 5. The future safety of a victim of the alleged offense and the community
> shall be considered.

TEX. CODE CRIM. PROC. ANN. art. 17.15 (West 2015). The Court of Criminal Appeals has

stated additional factors for the court to consider: (1) the defendant's work record; (2) the

defendant's family and community ties; (3) the defendant's length of residency; (4) the

defendant's prior criminal record; (5) the defendant's conformity with previous bond

conditions; (6) the existence of other outstanding bonds, if any; and (7) aggravating

circumstances alleged to have been involved in the charged offense. *See Ex parte*

4

*Jackson,* No. 03-18-00494-CR, 2019 Tex. App. LEXIS 3243, at *11 n.9 (Tex. App.—Austin Apr. 24, 2019, no pet.) (mem. op., not designated for publication) (citing *Ex parte Rubac,* 611 S.W.2d 848, 849-50 (Tex. Crim. App. [Panel. Op.] 1981) (bail on appeal)).

We review a trial court's decision regarding the amount of bail for abused discretion. *Ex parte Rubac*, 611 S.W.2d at 850. A trial court abuses its discretion if it acts without reference to any guiding rules or principles. *Ex parte Hunt,* 138 S.W.3d 503, 505 (Tex. App.—Fort Worth 2004, pet. ref'd). Although a reviewing court will not disturb the decision of a trial court if it is within the zone of reasonable disagreement, *Clemons v. State,* 220 S.W.3d 176, 178 (Tex. App.—Eastland 2007, no pet.), review for abuse of discretion requires more than simply deciding the trial court did not rule arbitrarily or capriciously. *Ex parte Beard,* 92 S.W.3d 566, 573 (Tex. App.—Austin 2002, pet. ref'd) (citing *Montgomery v. State,* 810 S.W.2d 372, 392 (Tex. Crim. App. 1991) (op. on reh'g)). Rather, a trial court's ruling is measured against the relevant criteria by which the ruling was made. *Id.* Bail determination is fact-driven; each case is judged on its own unique facts. *Ex parte Nimnicht,* 467 S.W.3d 64, 67 (Tex. App.—San Antonio 2015, no pet.). The mere fact that a trial court may decide a matter within its discretion differently than an appellate court under a similar circumstance does not demonstrate an abuse of discretion. *Foster v. State,* 180 S.W.3d 248, 250 (Tex. App.—Fort Worth 2005, pet. ref'd) (per curiam) (mem. op.).

*Application*

The evidentiary record is meager, limited to only the brief testimony of Appellant at both hearings. Yet following the October 15 hearing, the trial court detailed in a separate signed instrument expansive fact finding, relying in part on judicial notice of two

probable cause affidavits and other items filed in the clerk's record. They appear intended for both writ numbers. Among its findings of fact the trial court stated, "The Court, during the October 8th, [sic] 2020 evidentiary hearing and with the agreement of the parties, took judicial notice of everything (all pleadings and documents that had been filed in all cause numbers and all of the previous testimony from the August 31, 2020 evidentiary hearing)." Likewise, near the conclusion of the October 15, hearing the court announced:

> [T]he Court is taking judicial notice. And the Court is considering all the evidence in all these cause numbers, whether it's testimonial or whether it's pleading, both sides having no objections to this Court taking judicial notice of all the prior documentation and testimony.

In many adjudicatory proceedings, this procedure would be an improper extension of judicial notice, effectively admitting inadmissible hearsay statements, denying Appellant cross-examination and confrontation of adverse witnesses, and accepting the truth of the State's version of disputed facts in affidavits filed in the clerk's record.[6] But "[a] habeas application for reduction of bail is a 'proceeding regarding bail' within the meaning of Rule of Evidence 101(d)(1)(E), [now 101(e)(3)(C)], and therefore, the only Rules of Evidence that apply are those concerning privileges." 41 George E. Dix & John M. Schmolesky, TEXAS PRACTICE SERIES: CRIMINAL PRACTICE & PROCEDURE § 21:55 (3d ed., 2011); TEX. R. EVID. 101(e)(3)(C). In addition, given the agreement of the parties that the court was

---

[6] Rule of Evidence 201 permits a court to judicially notice adjudicative facts that are not subject to reasonable dispute because they are either generally known within the trial court's territorial jurisdiction or capable of accurate and ready determination from sources whose accuracy cannot reasonably be questioned. TEX. R. EVID. 201. But a court may not judicially notice the truth of disputed facts stated in an affidavit in the clerk's record. *See, e.g., In re S.M.P.,* No. 10-19-00466-CV, 2020 Tex. App. LEXIS 5061, at *6 n.1 (Tex. App.—Waco July 6, 2020, no pet.) (mem. op.) (refusing to consider affidavit in clerk's record of which trial court took judicial notice in termination of parental rights case and explaining "while a court may judicially notice the existence of an affidavit in its file, it may not take judicial notice of the truth of the factual contents contained there." (quotation marks, bracketing, and citation omitted)).

permitted to take judicial notice, we, therefore, consider all matters that were judicially noticed as properly part of the appellate record. *See Ex parte Parker,* 26 S.W.3d 711, 713 (Tex. App.—Waco 2000, no pet.) (Davis, C.J., concurring) (expressing concern at the reach of a trial court's consideration in a habeas bail reduction hearing but citing former rule of evidence 101(d)(1)(e) and noting the court's consideration of an offense report not in evidence was by agreement).

According to the affiant of the probable cause affidavit for Appellant's arrest for aggravated assault, Appellant struck his wife, M.M., numerous times to the head and face with a closed fist. During the occurrence he exhibited a black pocketknife, placed it to M.M.'s stomach, and threatened to kill her. Appellant "then used the knife to make several superficial abrasions to [M.M.'s] neck and left hand."

As for the forgery allegation, the trial court found that Appellant changed M.M.'s mailing address to his post office box during his release on personal bond. Appellant recovered a check payable to M.M. in the amount of $17,393.91 from the Texas Attorney General's Crime Victim Unit, and signed M.M.'s name. At Appellant's request, a third party deposited the check to her bank account. Appellant testified he and M.M. had each previously subscribed the name of the other to negotiable instruments and alleges M.M. had signed checks payable to him "dozens of times." Appellant alleges that some of the money from M.M.'s check was used for Appellant's transportation and care of his son with the remainder to be held in the bank.

When a conviction for the alleged offense may result in a lengthy prison sentence, bail must be set sufficiently high to secure the defendant's presence at trial. *Ex parte Dupuy,* 498 S.W.3d 220, 230 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *Ex parte*

*Scott,* 122 S.W.3d 866, 869 (Tex. App.—Fort Worth 2003, no pet.) (noting because the accused's reaction to the possibility of a lengthy prison sentence might be to not appear for trial, pretrial bail must be sufficiently high to secure the presence of the accused at trial). Hence, consideration of the "nature of the offense" necessarily includes the punishment authorized by law. *Ex parte Cascio,* 140 Tex. Crim. 288, 290, 144 S.W.2d 886, 887 (1940); *Ex parte Castillo-Lorente,* 420 S.W.3d 884, 888 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (noting "[t]he defendant's potential sentence and the nature of the crimes are significant factors for us to consider."). If Appellant is convicted of aggravated assault, and punishment is enhanced for the 2002 felony convictions, he faces a maximum sentence of confinement for life.[7] Further, a deadly weapon finding would affect Appellant's parole eligibility. *Calhoun v. State,* Nos. 05-19-00264-CR, 05-19-00265-CR, 2019 Tex. App. LEXIS 9594, at *2 (Tex. App.—Dallas Oct. 31, 2019, no pet.) (mem. op., not designated for publication) (citing *Duran v. State,* 492 S.W.3d 741, 745 (Tex. Crim. App. 2016)). If convicted of forgery with enhanced punishment, Appellant faces a maximum sentence of twenty years' confinement.[8] Both alleged offenses were

---

[7] The offense of aggravated assault is a second degree felony. TEX. PENAL CODE ANN. § 22.02(b). "[I]f it is shown on the trial of a felony of the second degree that the defendant has previously been finally convicted of a felony other than a state jail felony punishable under Section 12.35(a), on conviction the defendant shall be punished for a felony of the first degree." TEXAS PENAL CODE ANN. § 12.42(b) (West 2019). A first degree felony is punishable by imprisonment for life or for any term of not more than ninety-nine years or less than five years and a fine not to exceed $10,000. TEX. PENAL CODE ANN. § 12.32.

[8] The forgery allegation is a state jail felony, TEX. PENAL CODE ANN. § 32.21(e-1)(4), punishable by confinement in a state jail for any term of not more than two years or less than 180 days and a fine not to exceed $10,000. TEX. PENAL CODE ANN. § 12.35 (West 2019). An individual adjudged guilty of a state jail felony shall be punished for a third degree felony if a deadly weapon was used or exhibited during commission of the offense or the individual has previously been convicted of sexual assault or indecency with a child. TEX. PENAL CODE ANN. § 12.35(c). If it is shown on the trial of a state jail felony for which punishment may be enhanced under section 12.35(c) that the defendant has previously been finally convicted of a felony other than a state jail felony punishable under section 12.35(a), on conviction the defendant shall be punished for a felony of the second degree. TEX. PENAL CODE ANN. § 12.425(c) (West 2019). An individual adjudged guilty of a second degree felony shall be punished by imprisonment for any

committed against M.M. and the alleged forgery was committed during Appellant's release on personal bond.

Further, Appellant's inability to make bail was not clearly developed. "The accused's inability to make bail, even to the point of indigence, does not control over the other factors." *Ex parte Parker,* 26 S.W.3d at 712. A defendant's inability to make bail is generally shown by establishing exhaustion of individual and family funds. *Ex parte Hopkins,* Nos. 03-19-00695-CR, 03-19-00715-CR, 2020 Tex. App. LEXIS 6685, at *7 (Tex. App.—Austin Aug. 20, 2020, no pet.) (mem. op., not designated for publication). Vague references will ordinarily not suffice; rather, the defendant should detail his specific assets and financial resources. *Id.* At both hearings Appellant's counsel argued that Appellant was indigent. However, Appellant testified of a seventeen-dollar-per-hour job awaiting him. And at one point while testifying about M.M.'s disability checks, stated, "I make tens of thousands of dollars, and I have assets too . . . ."

The trial court also found that Appellant is a danger to M.M. and the community, is accused of a violent crime against M.M., and has a violent criminal record. The evidence shows that Appellant allegedly struck M.M. with a closed fist and used a knife to cause superficial abrasions. He said in testimony that he desired to be with M.M. and to seek reconciliation. Moreover, the court found from evidence that Appellant is a high risk sex offender. Appellant explained he was classified as high risk because he did not acknowledge guilt.

---

term of not more than twenty years or less than two years, and a fine not exceeding $10,000. TEX. PENAL CODE ANN. § 12.33 (West 2019).

9

The court further found that Appellant failed to follow the terms of his personal bond, apparently for contacting B.M. in violation of the order. Appellant testified he learned he "was not affecting [his] son and [he] should have contact with [his] son." When asked about his contact with his son Appellant testified "he's been with me 75 percent of the time, until I got a permanent job."

As for evidence in his favor, Appellant's testimony showed he had long been a resident of the county, held a seventeen-dollar-per-hour job which awaited if he was released, had a son who needed care and financial support, consistently reported as a sex offender for fifteen years, and twice voluntarily surrendered to law enforcement on the pending charges. Courts have favorably considered the accused's voluntary surrender as a factor in lowering bail. *See Ex parte Hellenguard,* 622 S.W.2d 875, 875-76 (Tex. Crim. App. 1981).

The clerk's record also contains a May 21, 2020 letter from a church elder to the district judge, reporting Appellant's participation in a jail Bible study and employment after jail. The letter concludes with the writer's accolade:

> I am very proud of how [Appellant] diligently searched for a job which would maximize his skills and enable him to afford a place so his son, [B.M.], would be able to come and stay with him. My understanding is that [Appellant] is now employed with the crew that is working in Bastrop to expand Highway 71 and he works weekends to help secure a better future for himself, his son and his wife, [M.M.].

Nevertheless, the evidence of Appellant's efforts at success conflicts. Testimony also showed that Appellant had no personal transportation and often walked, once slept under a bridge for two days, lived in a motel, and had no financial resources other than an uncashed check of some $285 from his employer.

Conclusion

A trial court setting bail must strike a balance between the defendant's presumption of innocence and the State's interest in assuring the defendant's appearance at trial. *Ex parte Beard,* 92 S.W.3d at 573. After carefully reviewing the record in the light most favorable to the trial court's ruling with due regard of the noted statutory and common law factors, we are unable to say the trial court abused its discretion by denying Appellant's requested relief from the amounts of bail ordered. Accordingly, Appellant's two issues are overruled.

We affirm the trial court's order of September 28, 2020, for writ number 1600-335 denying Appellant's application for writ of habeas corpus, and its order of October 15, 2020, for writ number 1630-335 denying Appellant's application for habeas corpus.


Lawrence M. Doss
Justice

Do not publish.