Opinion issued August 28, 2025



In The

# Court of Appeals

For The

# First District of Texas

———————————

NO. 01-25-00593-CR

NO. 01-25-00594-CR

NO. 01-25-00595-CR

———————————

## EX PARTE COREY D. JAMES

On Appeal from the 338th District Court
Harris County, Texas
Trial Court Case Nos. 1920960, 1920961, 1920962

## MEMORANDUM OPINION

In three separate causes, Appellant Corey D. James was charged with (1) murder, for which bond was set at $200,000, (2) aggravated assault with a deadly weapon, for which bond was sent at $75,000, and (3) assault of a pregnant person, for which bond was set at $20,000. James filed pretrial applications for writ of

habeas corpus in each case, requesting that his bonds be reduced. The trial court held a hearing on the writ applications. During the hearing, James presented his mother as a witness, and the State offered a police offense report into evidence, which was admitted under seal. No other testimony or evidence was presented. Following the parties' arguments, the trial court denied James' writ applications. James appeals. Without requesting briefing, we affirm. *See* TEX. R. APP. P. 31.2(b).

**Standard of Review**

We review a trial court's decision to grant or deny habeas corpus relief for abuse of discretion. *See Ex parte Gill*, 413 S.W.3d 425, 428 (Tex. Crim. App. 2013) ([T]he decision of a trial judge at a habeas proceeding regarding the imposition or reduction of bail will not be disturbed by this Court in the absence of an abuse of discretion." (internal quotation marks omitted)); *see also Ex parte Rubac*, 611 S.W.2d 848, 849–50 (Tex. Crim. App. 1981) (reviewing bail pending appeal for abuse of discretion); *Montalvo v. State*, 315 S.W.3d 588, 592 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (same). When a habeas appeal pertains to pretrial bail, we "measure the trial court's ruling against the relevant criteria by which the ruling was made." *Montalvo*, 315 S.W.3d at 593; *see also Ex parte Dixon*, No. PD-0398-15, 2015 WL 5453313, at *2 (Tex. Crim. App. Sept. 16, 2015) (not designated for publication) ("Habeas courts determine the bearing of the evidence on the relevant bail criteria *only* in the first instance. On appellate review, it is the duty of the

reviewing court to measure the ultimate ruling of the habeas court against the relevant bail factors to ensure that the court did not abuse its discretion." (emphasis in original)).

This Court will disturb the trial court's ruling only if it falls outside the zone of reasonable disagreement. *See Ex parte Allen*, 619 S.W.3d 813, 816 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd). "To determine whether a trial court abused its discretion [in ruling on a request to reduce bail], we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable." *Ex parte Reescano*, No. 01-25-00448-CR, 2025 WL 2201385, at *2 (Tex. App.—Houston [1st Dist.] Aug. 1, 2025, no pet. h.) (mem. op., not designated for publication) (citation omitted).

In reviewing a trial court's ruling on a habeas claim, we view the record and evidence in the light most favorable to the court's ruling. *Ex parte Gomez*, 624 S.W.3d 573, 576 (Tex. Crim. App. 2021). The mere fact that a trial court may decide a matter within its discretion differently than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). It is the appellant's burden to establish that the trial court abused its discretion in its bail determination. *Ex parte Rubac*, 611 S.W.2d at 849; *Ex parte McManus*, 618 S.W.3d 404, 407 (Tex. App.—Amarillo 2021, no pet.) ("In a proceeding seeking a reduction

3

in the amount of pretrial bail, the accused bears the burden of proof to show that the bail is excessive."); *Ex parte Beard*, 92 S.W.3d 566, 568 (Tex. App.—Austin 2002, pet. ref'd) ("The burden is on the accused to prove that bail is excessive.").

## Applicable Law

The United States and Texas Constitutions protect the right to be free from excessive bail. U.S. CONST. amend. VIII; TEX. CONST. art. 1, § 11. The primary purpose of bail is to secure the presence of the defendant in court for trial. *Ex parte Vasquez,* 558 S.W.2d 477, 479 (Tex. Crim. App. 1977); *Ex parte Dupuy*, 498 S.W.3d 220, 230 (Tex. App.—Houston 14th Dist.] 2016, no pet.). "Determining the appropriate bail amount is a balancing act between the defendant's presumption of innocence and the State's interest in assuring the defendant's appearance at trial." *Ex parte Cardenas*, 557 S.W.3d 722, 730 (Tex. App.—Corpus Christi-Edinburg 2018, no pet.) (internal quotation omitted).

In considering whether the trial court abused its discretion in denying James' applications for writs of habeas corpus requesting that his bail amounts be reduced, we apply the factors enumerated in Article 17.15 of the Code of Criminal Procedure. S*ee Ex parte Perez*, Nos. 02-10-00450-CR, 02-10-00451-CR, 2011 WL 255292, at *1–4 (Tex. App.—Fort Worth Jan. 27, 2011, no pet.) (mem. op., not designated for publication). Article 17.15 instructs trial courts to consider the following factors in setting a defendant's amount of bail:

4

1.  The bail and any conditions shall be sufficient to give reasonable assurance that the undertaking will be complied with.

2.  The power to require bail is not to be so used as to make it an instrument of oppression.

3.  The nature of the offense and the circumstances under which it was committed are to be considered.

4.  The ability to make bail shall be considered, and proof may be taken on this point.

5.  The future safety of a victim of the alleged offense, law enforcement, and the community shall be considered.

6.  The criminal history record information for the defendant shall be considered, including any acts of family violence, other pending criminal charges, and any instances in which the defendant failed to appear in court following release on bail.

7.  The citizenship status of the defendant shall be considered.

TEX. CODE CRIM. PROC. art. 17.15. In addition to the Article 17.15 factors, trial courts also may consider the following factors in setting the amount of bail:

1.  the accused's work record;

2.  the accused's family and community ties;

3.  the accused's length of residency;

4.  the accused's prior criminal record;

5.  the accused's conformity with previous bond conditions;

6.  the existence of other outstanding bonds, if any; and

7.  aggravating circumstances alleged to have been involved in the charged offense.

*Smith v. State*, 829 S.W.2d 885, 887–88 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd) (citing *Ex parte Rubac*, 611 S.W.2d at 849–50).

We review the same bail criteria to ensure the court did not abuse its discretion. "On appellate review, it is the duty of the reviewing court to measure the ultimate ruling of the habeas court against the relevant bail factors to ensure that the court did not abuse its discretion." *Ex parte Dixon*, 2015 WL 5453313, at *2 (citing TEX. CODE CRIM PROC. art. 17.15; TEX. CONST. art. 1, §§ 11, 13). We determine whether a bail amount is reasonable "on a case-by-case basis, weighing factors unique to each defendant and each offense." *Ex parte Cardenas*, 557 S.W.3d at 730; *see also Ex parte Beard*, 92 S.W.3d at 571 (noting case law is "of relatively little value in addressing the ultimate question of the appropriate amount of bail" because bail "cases are so individualized that generalization from results reached in others is difficult").

## Discussion

We review the relevant bail factors based on the limited record before us to ensure the trial court did not abuse its discretion.[1]

---

[1] The record does not include the indictments or the trial court's orders setting bond or bond conditions.

## A.      Sufficiently high bail

We first consider whether the bail is "sufficient to give reasonable assurance that the undertaking will be complied with."  Here, the $200,000 bail in the murder case, $75,000 in the aggravated-assault-with-deadly-weapon case, and $20,000 in the assault-of-a-pregnant-person case were sufficient to give reasonable assurance that James will appear in court.  *See* TEX. CODE CRIM. PROC. art. 17.15(1).

## B.      Whether bail is oppressive and the ability to pay it

The second factor, the requirement that bail not be used as "an instrument of oppression," and the fourth factor, the ability to make bail, are related.  *See id.* art. 17.15(2), (4).  We thus consider them together.

Bail set in a particular amount "becomes oppressive when it is based on the assumption that the defendant cannot afford bail in that amount and when it is set for the express purpose of forcing the defendant to remain incarcerated."  *Ex parte Moreno*, No. 01-20-00312-CR, 2021 WL 4733239, at *9 (Tex. App.—Houston [1st Dist.] Oct. 12, 2021, no pet.) (mem. op., not designated for publication) (citing *Ex parte Nimnicht*, 467 S.W.3d 64, 70 (Tex. App.—San Antonio 2015, no pet.)); *Ex parte Durst*, 148 S.W.3d 496, 499 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (stating that where bail amount was set "solely to prevent [defendant] from getting out of jail," "bail [was] being used as an instrument of oppression").  We thus consider whether the record reflects the trial court made its decision regarding bail

"for the purpose of forcing [James] to remain incarcerated pending trial." *Milner v. State*, 263 S.W.3d 146, 149 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

During the hearing, James' mother testified she cannot afford the current bail amounts. She makes around $50,000 per year but stated that she and James do not own any assets. She testified she tried to gather money to pay the bail amounts but does not have family and friends in the Houston area who could provide financial support for her and James. She expressed she could reasonably afford bonds of $50,000 for the murder charge, $50,000 for the aggravated assault charge, and $10,000 for the assault-of-a-pregnant person charge.

On cross-examination, James' mother agreed around twelve other people had come to the hearing in support of James but that she had asked only one of them for money. And the record is silent as to whether James or anyone on his behalf contacted a bondsman in attempt to secure bonds.

Based on the record and the limited evidence before the trial court on this factor, we cannot conclude that the trial court set bail in these three cases for the sole purpose of keeping James incarcerated or that the court utilized bail as a means to oppress him or prolong his incarceration. *See Ex parte Grant*, No. 01-23-00889-CR, 2024 WL 924433, at *5 (Tex. App.—Houston [1st Dist.] Mar. 5, 2024, no pet.) (mem. op., not designated for publication) (noting "nothing in our record shows that the trial court intentionally set a high bail amount to keep [appellant] incarcerated");

*Ex parte Moreno*, 2021 WL 4733239, at *13 (affirming trial court's denial to lower bail from $1,000,000 in capital murder case despite appellant's arguing she could not afford bail because she was indigent). Nothing supports that the trial court set the bail amounts solely because she wanted James to remain incarcerated. *See Ex parte Harris*, 733 S.W.2d 712, 714 (Tex. App.—Austin 1987, no pet.) (holding this factor weighed against trial court's decision where trial court stated, "I'd rather see him in jail than to see someone's life taken.").

The trial court also could have reasonably concluded James did not provide sufficient evidence about his and his family's and friends' ability to cumulatively provide money to furnish bail in the amounts set by the trial court because numerous friends and family members attended the hearing but James' mother had asked only one of them for money and there was no evidence regarding any attempts to work with bondsmen to secure bonds. *See Ex parte Bartolo*, No. 01-22-00544-CR, 2022 WL 17254957, at *7 (Tex. App.—Houston [1st Dist.] Nov. 29, 2022, pet. ref'd) (mem. op., not designated for publication) ("Generally, to show that he cannot make bail, a defendant must demonstrate that his funds and his family's funds have been exhausted."); *Ex parte Martinez*, No. 10-17-00420-CR, 2018 WL 1958016, at *3 (Tex. App.—Waco Apr. 25, 2018, no pet.) (mem. op., not designated for publication) (affirming denial of writ requesting reduction in bail amount and stating

9

appellant did not "detail either his or his family's specific assets and financial resources, nor did he explain what efforts, if any, were made to furnish the bond").

Moreover, even assuming James could not afford the bail amounts set, it would not automatically establish the amounts were excessive. *See Ex parte Tomlinson*, No. 14-02-00784-CR, 2002 WL 31008642, at *2 (Tex. App.—Houston [14th Dist.] Sept. 5, 2002, no pet.) (mem. op., not designated for publication); *Ex parte Bogia*, 56 S.W.3d 835, 837 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (stating that "accused's ability or inability to make bond is relevant, but not controlling") (citing *Ex parte Dueitt*, 529 S.W.2d 531, 532 (Tex. Crim. App. 1975)). When considering whether a particular bail amount is reasonable, Article 17.15 requires consideration of a defendant's ability to make bail. *Ex parte Martinez*, 2018 WL 1958016, at *3. But an "inability to make bail, even to the point of indigence, does not control over the other factors." *Id.* (quoting *Ex Parte Brossett*, 524 S.W.3d 213, 276 (Tex. App.—Waco 2016, pet. ref'd)). The ability to make bail is to be regarded, and proof may be taken upon this point as one of many factors to be considered by the trial court. *See* TEX. CODE CRIM. PROC. art. 17.15; *see also Ex parte Martinez*, 2018 WL 1958016, at *3 (holding trial court did not abuse discretion in denying retired military veteran's request to reduce bail despite appellant's and sister's testimony that he could not make amount of bail and taking into consideration other factors). Indeed, "[i]f the ability to make bond in a specified

amount controlled, then the role of the trial court in setting bond would be completely eliminated, and the accused would be in the unique posture of determining what his bond should be." *Ex parte Nimnicht*, 467 S.W.3d at 68. Further, as the Court of Criminal Appeals has clarified, the Legislature, in placing "a mandatory duty" on trial courts to consider the safety of the community when fixing bail, "requires trial courts to consider a fact that is not related to the amount the defendant can afford to pay." *Ex Parte Kretzer*, No. PD-1279-11, 2012 WL 1882245, at *1 (Tex. Crim. App. May 16, 2012) (not designated for publication) (citation omitted).

We further note that the bail amounts set in these cases is on par with or lower than other cases involving a defendant charged with a first-degree, second-degree, and third-degree felony offenses. *See, e.g.*, *Ex parte Fernandez*, No. 05-24-00221-CR, 2024 WL 3249077, at *4 (Tex. App.—Dallas July 1, 2024, no pet.) (mem. op., not designated for publication) ("$200,000 has been held to not be outside the range of reasonable disagreement for bail on a charge of aggravated assault with a deadly weapon."); *Ex parte Wilson*, No. 06-21-00116-CR, 2022 WL 68224, at *4 (Tex. App.—Texarkana Jan. 7, 2022, no pet.) (mem. op., not designated for publication) ("[O]ur sister courts have regularly found that a $100,000.00 bond for a third-degree felony offense is not excessive or so high that it constitutes an instrument of oppression."); *Ex parte Stocker*, No. 14-20-00467-CR, 2020 WL

7711348, at *3 (Tex. App.—Houston [14th Dist.] Dec. 29, 2020, pet. ref'd) (mem. op., not designated for publication) (concluding that $500,000 is reasonable bail for first-degree charged offense and $200,000 is reasonable bail for second-degree charged offense); *Ex parte Tata*, 358 S.W.3d 392, 399 n.6 (Tex. App.—Houston [1st Dist.] 2011, pet. dism'd) ("[T]his Court has previously approved bail amounts ranging from $100,000 to $600,000 for first degree felony offenses[.]").

We conclude the second and fourth factors do not weigh in favor of James' requested relief.

## C.     The nature of the offense

The third factor contemplates "the nature of the offense and the circumstances under which it was committed." The nature of the offense and the length of possible sentence are key considerations in determining the reasonableness of bail. *Ex parte Rubac*, 611 S.W.2d at 849 (highlighting these as primary factors); *see also Ex parte Nimnicht*, 467 S.W.3d at 67 ("When determining reasonable bail, a trial court shall give the most weight to the nature of the offense and the length of possible sentence.").

James has been charged with murder for the shooting death of 21-year-old Carnell Meeks and aggravated assault with a deadly weapon for shooting 56-year-old Regina Hall. Per the police report, James was an acquaintance of Meeks and Hall. On January 23, 2025, James and Meeks allegedly engaged in a physical

fight regarding a videogame system. Witnesses stated James, who lived in his own apartment, had come into the house where his father and his father's girlfriend lived and taken a videogame system that may have belonged to Meeks. During or following the fight, James fired a gun at Meeks, who did not have a gun. James allegedly fired multiple shots, one of which struck Hall. James purportedly fled the scene on foot and surrendered himself to police on January 27, 2025. A witness stated she had seen James carrying a gun in the past.

The admitted police report did not pertain to the charge for assault of a pregnant person, and there is scant evidence in the record regarding that offense, but James' mother testified the complainant in that charge is the mother of James' child. James' mother testified she learned about that case in 2024, meaning it is unrelated to the 2025 scenario that led to the murder and aggravated-assault charges. James' counsel argued that the complainant has filed an affidavit of non-prosecution in the assault-of-a-pregnant-person charge, but nothing in the record supports this or indicates the charge has been dropped.

James' charged offenses have the following punishment ranges: (1) murder, a first-degree felony with a punishment range of five to ninety-nine years' confinement or life imprisonment; (2) aggravated assault with a deadly weapon, a second-degree felony with a punishment range of two to twenty years' confinement; and (3) assault of a pregnant person, a third-degree felony with a punishment range

13

of two to ten years' confinement. *See* TEX. PENAL CODE §§ 12.32–.34, 19.02, 22.01, 22.02.

The alleged circumstances of the offenses, and the ranges of punishment should James be found guilty, weigh in favor of the trial court's ruling. *In re Hulin,* 31 S.W.3d 754, 759 (Tex. App.—Houston [1st Dist.] 2000, no pet.) ("The primary factors to be considered in determining what constitutes reasonable bail are the punishment that can be imposed and the nature of the offense."); *Ex parte Bartolo*, 2022 WL 17254957, at *5 ("The serious and violent nature of the first-degree felony offense of murder with which appellant is charged and the potential sentence appellant faces related to charged-felony offense weigh against a determination that the bail amount sent by the trial court was excessive."); *see also Ex Parte Reescano*, 2025 WL 2201385, at *6.

## D.    Safety of the victims, law enforcement, and community

The fifth factor involves safety concerns. James' mother said he did not have a history of violence with her, and she does not think he would pose a danger to the community if released on bond. But she also testified she was unaware of the facts involved in the murder and aggravated-assault charges filed against James. And she admitted the three charges filed against James are very serious, and that his conduct did not set a good example for his three younger siblings.

Based on the violent nature of the instant offenses, which involved two separate scenarios of James allegedly committing violence against acquaintances (including the mother of his child), the trial court reasonably could have concluded that James poses a threat to the community. This factor supports the trial court's decision. *See Burns v. State*, No. 05-23-01013-CR, 2024 WL 909840, at *5 (Tex. App.—Dallas Mar. 4, 2024, no pet.) (mem. op., not designated for publication) (noting that "trial court could have concluded appellant posed a threat to the community," "[c]onsidering the seriousness and violence of the charged offense [of burglary of habitation with to commit murder," and that "this factor weighs against a determination the amount of bail was excessive.").

## E. Other factors

Trial courts may also consider factors such as the accused's work record, his family and community ties, his length of residence, his prior criminal record, his conformity with previous bond conditions, the existence of other outstanding bonds, if any, and aggravating circumstances allegedly involved in the charged offense. *Smith*, 829 S.W.2d at 887–88 (citing *Ex parte Rubac*, 611 S.W.2d at 849).

James' mother testified that James does not have any prior criminal convictions or a juvenile record and has never failed to appear for court or had any bond violations. She stated he is not a flight risk and has no means of leaving the

country.  She testified he has held three prior jobs.  She also said James has friends and family in the area that can provide him with emotional support.

James' mother testified that if James is released on bond, he would stay with her, and she would comply with the court's conditions of release.  She runs a tax company from her house, which means she would be at the house all day to monitor James.  She said James would not leave her house if he was on 24-hour per day house arrest.  She would also ensure he appeared for court dates.

These facts weigh in favor of a reduction in the bond amounts.  *See Ex parte Estrada*, 640 S.W.3d 246, 253 (Tex. App.—Houston [14th Dist.] 2021, pet. ref'd) (several factors "favor[ed] a lower, more achievable bail amount," such as appellant had significant ties to area, always lived in Texas, maintained employment, and appellant's family members testified at bail hearing that they would ensure conditions set by court would be followed, and appellant planned to reside with family upon release from custody).

Nonetheless, considering all of the Article 17.15 factors and the supplemental factors as a whole, we conclude that the trial court weighed the relevant factors and properly exercised its discretion in denying James' request to lower his bonds.  The trial court expressly stated on the record that it had considered the Article 17.15 factors and, based on those factors, denied the bail-reduction request.

16

## Conclusion

Based on the record before this Court, we cannot conclude the trial court abused its discretion by denying James' applications for writ of habeas corpus. The serious and violent nature of the charged offenses, a potential life sentence, and the lack of evidence proving James exhausted all means of raising money weigh against the mitigating factors. We thus affirm the trial court's judgments denying James' applications for writs of habeas corpus.

**PER CURIAM**

Panel consists of Chief Justice Adams and Justices Caughey and Johnson.

Do not publish. TEX. R. APP. P. 47.2(b).

17